2018 IL App (1st) 161323

No. 1-16-1323

FIRST DISTRICT
December 10, 2018

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 09 CR 18310 |
| | ) | |
| CALEB CHARLESTON, | ) | |
| | ) | Honorable |
| | ) | Dennis J. Porter |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GRIFFIN delivered the judgment of the court, with opinion.
Justices Pierce and Walker concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant Caleb Charleston was convicted of first degree murder (720 ILCS 5/9-1(a)(1) (West 2008)) for his participation in a drive-by shooting and sentenced to a 75-year term of imprisonment. Defendant's conviction was affirmed on appeal. See *People v. Charleston*, 2015 IL App (1st) 130936-U. Defendant's sentence, however, was vacated, and his case was remanded for a resentencing hearing because the trial court improperly considered as substantive evidence a witness's hearsay statement that the victim was killed because he cooperated with authorities. The trial court conducted a new sentencing hearing and sentencing him to a 60-year term of imprisonment, which represented a 15-year reduction from the previous sentence imposed.

¶ 2     Defendant appeals his sentence. He argues that it is excessive and violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) as applied to him. We affirm.

¶ 3                              I. BACKGROUND

¶ 4      Defendant Caleb Charleston was convicted of first degree murder (720 ILCS 5/9-1(a)(1) (West 2008)) for his participation in a drive-by shooting. He was originally sentenced to a 75-year term of imprisonment. See 730 ILCS 5/5-4.5-20 (West 2008); *id.* § 5-8-1(a)(1)(d)(i). The State presented the following evidence at his trial.

¶ 5      On June 7, 2009, defendant drove by a location in Chicago as his passenger, co-defendant Jeffrey Allen (Allen), fired 17 shots at victim Patrick Stribling (Stribling). Not all of the 17 shots were fired at the same time. When Stribling was first located, Allen fired four or five shots at him. Stribling was hit and fell to the ground. An eyewitness described Stribling as panicked and crawling to get away. Defendant pulled away, circled the block and returned. Allen fired a dozen more shots at Stribling. Stribling died. The car used in the shooting was found abandoned a short time later, and apparently, someone had attempted to set it on fire. The car turned out to have been stolen five days earlier.

¶ 6      This court affirmed defendant's conviction on appeal. See *Charleston*, 2015 IL App (1st) 130936-U. However, defendant was granted a new sentencing hearing because the trial court had improperly considered as substantive evidence a witness's hearsay statement that Stribling was killed because he cooperated with authorities in a separate murder case. On remand, the trial court was ordered to consider (1) the witness' hearsay statement "for what it is and determine what weight to give it, if any" and (2) defendant's age in light of recent "legal and psychological developments" regarding youthful offenders. *Id.* ¶¶ 37-38. Defendant was an adult (18 years old) when he committed the crime.

¶ 7    At the time of his resentencing, defendant was 25 years old. He presented no witnesses, and neither did the State. Instead, the parties relied on argument and both referenced evidence presented at defendant's initial sentencing hearing. Defendant gave a statement in allocution.

¶ 8    The State argued that defendant was an adult when he committed the offense. Before turning 18, he received probation for a residential burglary, went on to steal a car when he turned 18, and, while he was on probation for that offense, committed the instant offense of first degree murder (720 ILCS 5/9-1(a)(1) (West 2008)). The State emphasized the manner in which Stribling was killed and argued that, given the nature of the offense, the sentence imposed was warranted.

¶ 9    Defendant argued that he received no infractions while in prison. He was raised without a father or proper role model and had a drug habit when he committed the offense. Defendant attended high school through the tenth grade and was on his school's basketball team. Throughout his time in prison, he kept his familial and community ties.

¶ 10    In allocution, defendant stated that he had matured mentally, physically, and spiritually while in prison. He mentioned wanting to "fight harder" for himself, but acknowledged that his offense affected his family. Defendant said he was "[t]ruly sorry for [Stribling's] family" and what his "loved one's have endured and [are] still enduring." He further stated that "[Stribling's] life was stolen from him," but mentioned that his life was "stolen from me in a way." Defendant told the trial court "I'll have another chance to prove my innocence," but emphasized that he was "not destined for a life of crime."

¶ 11    The trial court explained the basis for its sentencing determination. The trial court stated that it would "ignore" the previously relied upon hearsay statement and then turned to consider the evidence presented at defendant's trial. Stribling's killing, the trial court noted, was "as cold-

blooded a killing I have ever seen in this courtroom I'll tell you that right now." The car used in the shooting was stolen and someone had attempted to set it on fire, which indicated to the trial court that there had been "prior planning." The trial court considered defendant's criminal history and stated, "the fact you had as much criminal history as you did at your young age is a damning statement to this court."

¶ 12     As for defendant's statement in allocution, the trial court found that defendant had asked for mercy, but had not expressed remorse. Defendant's statement and actions, overall, demonstrated "a lack of respect for the rights of strangers." The trial court resentenced defendant to a 60-year term of imprisonment, which represented a 15-year reduction from the previous sentence imposed. See *Charleston*, 2015 IL App (1st) 130936-U, ¶ 2.

¶ 13     Defendant filed a motion to reconsider his sentence, which was denied. This appeal followed. Defendant argues that the trial court focused too heavily on the retributive aspects of punishment and failed to consider his age and rehabilitative potential when it fashioned his sentence. He further claims that the trial court improperly considered his failure to admit guilt as a factor in aggravation. Defendant also contends that, in light of his age of 18 when he committed the offense, his sentence violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) as applied to him.

¶ 14                                        II. ANALYSIS

¶ 15     The issues on appeal are (1) whether the trial court's sentencing determination was an abuse of discretion and (2) whether the sentence imposed is unconstitutional as applied.

¶ 16     Criminal penalties must be determined according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. Ill. Const. 1970, art. I, § 11 ("[a]ll penalties shall be determined both according to the seriousness of the offense and with the

objective of restoring the offender to useful citizenship"). The legislature and judiciary play a dual role in achieving these objectives; the legislature prescribes the permissible sentencing ranges for criminal offenses, and the trial court fashions the appropriate sentence within the statutory range. *People v. Taylor*, 102 Ill. 2d 201, 206 (1984); *People v. Fern*, 189 Ill. 2d 48, 53 (1999). A sentence imposed within the statutory range is presumed to be proper and will not be disturbed absent an abuse of discretion. *People v. Butler*, 2013 IL App (1st) 120923, ¶¶ 30-31. An abuse of discretion is found when a sentence is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *Id.* ¶31.

¶ 17    The sentence imposed here was within the statutory range prescribed by the legislature. The applicable sentencing range for defendant's offense was 35 to 75 years because he committed first degree murder (720 ILCS 5/9-1(a)(1) (West 2008)) while armed with a firearm. See 730 ILCS 5/5-4.5-20 (West 2008) (20 to 60-year sentencing range for first degree murder); see also *id.* § 5-8-1(a)(1)(d)(i) (mandatory 15-year enhancement). Accordingly, we presume the sentence is proper and review it for an abuse of discretion.

¶ 18    Defendant seeks first-prong plain error review because he failed to raise his arguments in a postsentencing motion. See *People v. Herron*, 215 Ill. 2d 167, 178 (2005) (plain error doctrine allows a reviewing court to reach a forfeited error affecting substantial rights where the evidence was so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence). We first determine whether an error occurred. See *People v. Garner*, 2016 IL App (1st) 141583, ¶ 28 (first step in the plain-error analysis is to determine whether an error occurred).

¶ 19    We hold that the trial court's sentencing determination was not an abuse of discretion. The trial court considered defendant's rehabilitative potential and determined that the seriousness

of the offense and other aggravating factors warranted the sentence imposed. *People v. Tye*, 323 Ill. App. 3d 872, 890 (2001) (although the trial court is required to consider defendant's rehabilitative potential, it is not required to give greater weight to that factor than to the seriousness of the offense or other aggravating factors).

¶ 20     We first note that the trial court gave due consideration to the mitigating factors. See *People v. Peoples*, 2015 IL App (1st) 121717, ¶ 112 (a minimum sentence is not necessarily warranted simply due to the presence of some mitigating factors). The trial court considered the fact that defendant had not received any infractions or reprimands while incarcerated and determined that defendant's adjustment to his present circumstances mitigated in his favor. It considered defendant's presentence investigation report and found that defendant had showed "concern" for his family members and recognized the impact his incarceration had upon them. Contrary to defendant's argument, the trial court also duly considered defendant's age, though it may not have considered this factor in the manner defendant had intended.

¶ 21     Defendant's primary contention on appeal is that the trial court failed to consider his age as a mitigating factor and as conclusive of his rehabilitative potential. He argues that his brain was "still developing" at 18 years of age and that his commission of the offense was characteristic of the "transient immaturity" and "wild and impulsive behavior" attendant to youth, not criminality. Defendant's argument is unavailing.

¶ 22     There is no evidence in the record to support defendant's contentions that his commission of the offense was solely attributable to his age or that this factor alone is conclusive of his rehabilitative potential. At his resentencing hearing, defendant called no witnesses and presented no evidence of his rehabilitative potential from an objective, medical, or scientific standpoint. A review of the record reveals that defendant only mentioned his age in passing.

¶ 23    We find that the trial court *did* take defendant's age into account when it sentenced him and made explicit references to his youth. Because defendant was an adult when he committed first degree murder (720 ILCS 5/9-1(a)(1) (West 2008)), the trial court was not required to consider the sentencing factors applicable to juveniles or to treat his age as a factor that mitigated in his favor. See 730 ILCS 5/5-4.5-105 (West 2016) (listing additional factors to be considered in mitigation when sentencing a juvenile); see also 730 ILCS 5/5-5-3.1 (West 2008) (listing factors to be considered in mitigation when sentencing an adult). An adult defendant's age is but one factor for consideration when a trial court fashions an appropriate sentence. Although defendant here may have been close in age to a juvenile when the offense was committed, that fact, standing alone, does not render his sentence excessive. *People v. Decatur*, 2015 IL App (1st) 130231, ¶ 16 ("no reported authority holds that an adult defendant's relative youth, standing alone, renders a sentence longer than the statutory minimum excessive").

¶ 24    Here, the trial court's consideration of defendant's age coincided with what it considered to be a pattern of criminality that started when defendant was a juvenile and continued into adulthood. The trial court stated that defendant had been placed on probation for residential burglary as a juvenile and, upon attaining 18 years of age, stole a car, was again placed on probation, and then committed the offense of first degree murder (720 ILCS 5/9-1(a)(1) (West 2008)). The trial court was not required to overlook these facts and attribute past instances of criminality to defendant's age alone. See 730 ILCS 5/5-5-3.2(a)(3) (West 2008) (allowing trial court to consider history of prior delinquency or criminal activity); see also *People v. Trimble*, 220 Ill. App. 3d 338, 354 (1991) (consideration of delinquency adjudications in adult sentencing hearings is proper).

¶ 25    It is clear from the record that the trial court found the nature and seriousness of defendant's offense to be of primary concern. *People v. Flores*, 404 Ill. App. 3d 155, 159 (2010) (the nature and circumstances of the offense and the history and character of the defendant are factors that govern rehabilitative potential). At defendant's resentencing hearing, the trial court recalled the evidence presented at trial. Defendant's passenger fired multiple shots from a car and hit his victim. Rather than drive away, defendant circled the block and returned so that his passenger could "put nine more in him because he wasn't quite dead yet."

¶ 26    In the trial court's mind, Stribling's killing was "as cold-blooded a killing I have ever seen in this courtroom." The court made note that the evidence indicated "prior planning" because "the car used was stolen and it was very shortly thereafter found in an attempt to burn the car destroying any evidence that might be in it." The trial court's decision to focus on the seriousness of defendant's offense was not improper. See *People v. Horta*, 2016 IL App (2d) 140714, ¶ 43 (the seriousness of the offense remains the most important consideration when fashioning a criminal sentence).

¶ 27    The trial court further considered defendant's rehabilitative potential when he gave his statement in allocution. See *People v. Ward*, 113 Ill. 2d 516, 528 (1986) (" '[a] defendant's truthfulness or mendacity while testifying on his own behalf, almost without exception, has been deemed probative of his attitudes toward society and prospects for rehabilitation and hence relevant to sentencing' " (quoting *United States v. Grayson*, 438 U.S. 41, 50 (1978))). The trial court listened to defendant's statement and found that, in "tenor" and content, it demonstrated a lack of remorse and "utter exclusion of concern for innocent people who [sic] come across your path." The trial court determined that defendant was not repentant and expressed that it did not believe defendant was innocent. A lack of remorse and the failure to show a penitent spirit may

properly be considered in determining sentences. *Ward*, 113 Ill. 2d at 529. The trial court was at liberty to make these determinations and to express its belief that defendant was guilty.

¶ 28 Defendant argues that "the judge explicitly considered [defendant's] claim of innocence in his allocution statement as a factor in aggravation." He further claims that his protestation of innocence was the "main reason for the judge's imposition of a lengthy sentence." Defendant's arguments are unavailing.

¶ 29 The trial court was at liberty to express its belief that defendant was guilty, and it was free to consider defendant's protestation of innocence and lack of remorse as indicative of his character and prospects for rehabilitation. *People v. Abrams*, 2015 IL App (1st) 133746, ¶ 36 (a defendant's insistence on his innocence and lack of remorse tellingly indicate his character and prospects for rehabilitation). A trial court is not prohibited from considering a defendant's protestation of innocence and lack of remorse as factors in aggravation so long as its decision to treat those factors as such is not automatic or arbitrary. *Ward*, 113 Ill. 2d at 529. Further, it is well settled that a defendant's protestation of innocence may send a strong message to the trial court that he or she is "an unmitigated liar and at continued war with society." *Id.* at 528.

¶ 30 The trial court here was not bound to adopt a particular interpretation of defendant's statement in allocution, but was rather free to determine the message it conveyed. Defendant stated that he "should have been more vocal with [the trial court] and the attorney that represented me." He asked that his sentencing enhancement be removed and mentioned that the hearing was not "the reversal of the trial he was looking for but it's a step in the right direction." Defendant further stated, "it's messed up how many how street violence in Chicago has taken so many lives. [Stribling's] life was stolen from him and how I feel my life was stolen from me in a

way but I'll have another chance to try to prove my innocence." We find the trial court's consideration of defendant's statement to be anything but improper.

¶ 31     We also reject defendant's argument that the trial court's purported "distaste" for this court's remand for resentencing played a role in its sentencing determination. We find that the trial court complied with this court's order. It ignored the witness's hearsay statement (though it did not have to do so) when weighing the relevant factors and imposing defendant's sentence (*Charleston*, 2015 IL App (1st) 130936-U, ¶ 37 ("[t]he trial judge should consider Williams' statement for what it is and determine what weight to give it, if any")) and gave due consideration to defendant's age.

¶ 32     Considering the record as a whole, the trial court did not abuse its discretion when it fashioned defendant's sentence. The sentence imposed was not at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *Ward*, 113 Ill. 2d at 526-27 (the reviewing court should not focus on a few words or statements of the trial court; rather, the determination of whether or not the sentence was improper must be made by considering the entire record as a whole). Accordingly, we find no plain error because no error occurred.

¶ 33     Defendant challenges the constitutionality of his sentence and argues that it violates the proportionate penalties clause of the Illinois Constitution as applied to him. Ill. Const. 1970, art. I, § 11. We review this issue *de novo*. *People v. Davis*, 2015 IL App (1st) 121867, ¶ 7 (whether a statute violates the proportionate penalties clause is a question we review *de novo*).

¶ 34     Defendant claims that, in light of his age of 18, his sentence is so cruel, degrading, and wholly disproportionate to the offense of first degree murder (720 ILCS 5/9-1(a)(1) (West 2008)) that it shocks the moral sense of the community. *People v. Brown*, 375 Ill. App. 3d 1116, 1118

(2007). To support this contention, defendant relies on precedent that does not apply to him: *Miller v. Alabama*, 567 U.S. 460, 489 (2012) (holding that the eighth amendment prohibits mandatory life-without-parole sentences for juveniles who commit murder); *Graham v. Florida* 560 U.S. 48, 82 (2010) (holding that the eighth amendment prohibits mandatory life-without-parole sentences for nonhomicide juvenile offenders); *People v. Reyes*, 2016 IL 119271, ¶ 10 (extending the prohibition in *Miller* to mandatory sentences that cannot be served in a juvenile's lifetime). These cases involve mandatory sentences imposed upon juvenile defendants, whereas, here, defendant received a discretionary sentence for a crime he committed as an adult. Accordingly, these cases do not apply here.

¶ 35    The following cases similarly fail to support defendant's contention that his sentence is unconstitutional as applied: *People v. Harris*, 2016 IL App (1st) 141744, *aff'd in part, rev'd in part*, 2018 IL 121932, *People v. House*, 2015 IL App (1st) 110580, and *People v. Williams*, 2018 IL App (1st) 151373. These cases involved mandatory sentences imposed by the legislature. The trial court here properly exercised its discretion and reduced defendant's previous sentence by 15 years.

¶ 36    Accordingly, defendant's cited authority does not apply to him, and he has made no showing that the evolving science on juvenile maturity relied upon in *Miller* and its progeny applies to his specific facts and circumstances. He presented no evidence at his resentencing hearing, an evidentiary hearing was not conducted, and the trial court made no factual findings. Defendant's as-applied constitutional challenge must fail.

¶ 37                                   III. CONCLUSION

¶ 38    Accordingly, we affirm.

¶ 39    Affirmed.