2023 IL App (2d) 220183-U
No. 2-22-0183
Order filed January 9, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) ) | Nos. 21-CF-69 21-DT-33 21-TR-675 |
| MICHAEL S. SEWELL, | ) ) | Honorable Stephen L. Krentz, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: Counsel's motion to withdraw is granted. Judgment affirmed.

¶ 2    Defendant, Michael S. Sewell, was charged (1) in case No. 21-DT-33, with one count of driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2020)); (2) in case No. 21-CF-69, with two counts of aggravated DUI (*id.* § 11-501(a)(2), (d)(1)(A)) and one count of driving while license suspended (DWLS) (*id.* § 6-303(d-2) (West 2020)); and (3) in case

No. 21-TR-675, with operating an uninsured vehicle (*id.* § 3-707(a) (West 2020)). The cases proceeded together.

¶ 3     Before trial, the State filed a motion *in limine* seeking to admit evidence that defendant was convicted on August 29, 2012, of unlawful possession of a controlled substance. The trial court granted the motion over defendant's objection that the danger of unfair prejudice substantially outweighed the probative value of the evidence.

¶ 4     Defendant waived his right to a jury trial, and the matter proceeded to a bench trial. At trial, Joseph McElroy testified that between 11 and 11:15 p.m. on March 5, 2021, he woke to a crash or bang. His power went out. He looked out the window and saw headlights come on and then go off. The headlights were in a field. McElroy went outside with a flashlight, called 911, and drove in his truck on Little Rock Road toward where he had seen the headlights. McElroy did not see anyone as he drove toward that location. McElroy stopped when he saw a Volkswagen in a field off the roadway. McElroy surmised that the Volkswagen had left the road where a curve began and had proceeded straight for approximately 100 yards before coming to rest.

¶ 5     McElroy saw nobody on the road or walking in the field. McElroy saw defendant exit the passenger side of Volkswagen and walk toward him. Defendant's gait was unsteady, his eyes were "glossed over," and there was a small amount of blood on his forehead. McElroy asked if there was anyone else in the vehicle. Defendant said no. Defendant started to get into McElroy's truck and asked McElroy to take him away from there. McElroy told defendant to stay out of the truck, adding that help was on the way. Defendant then started to walk at a rapid pace toward McElroy's house. At some point, defendant fell in a field. During his interaction with defendant, McElroy noticed the smell of alcohol.

¶ 6 Plano police officer Matt Johnson arrived at the scene and saw defendant lying on the ground in a field. Johnson testified that defendant's clothing was unkempt, and he had a small laceration on his head. After an ambulance arrived, Johnson and Sergeant Roberto Hernandez searched the area, looking for anyone else who might have been in the Volkswagen. They found no one. Johnson did not see any footprints leading from the Volkswagen into the field. Johnson testified that a downed utility pole was in the area between the road and the Volkswagen.

¶ 7 Johnson testified that he returned to the area where emergency medical technicians were attending to defendant. In speaking with defendant, Johnson noted that defendant's speech was "slurred and mumbled." Johnson also smelled the odor of an alcoholic beverage. As a result, Johnson formed the opinion that defendant was under the influence of alcohol. Johnson then placed defendant under arrest. Johnson asked defendant to take a Breathalyzer test, but defendant refused. Johnson then obtained a search warrant to draw defendant's blood for testing to determine his blood alcohol concentration (BAC). At about 3:30 a.m., defendant was transported to a nearby hospital, where his blood was drawn at about 4 a.m. Test results showed a BAC of 0.202. While being transported to the Kendall County jail, defendant told Johnson that he would beat the case on technicalities.

¶ 8 The State presented evidence that police found the Volkswagen's key fob in defendant's pocket at the scene. The court admitted an abstract of defendant's driving record into evidence, which showed that defendant's license was suspended on March 5, 2021. In addition, the parties stipulated that, after his arrest, defendant could not produce an insurance card for the Volkswagen when asked to do so.

¶ 9 Defendant testified that on March 5, 2021, he did not have a car and needed a ride from Elgin to Geneva for a job interview. Defendant asked his neighbor Juan for a ride, but Juan did

not have access to a vehicle. Defendant was able to borrow his friend Jorge's car so that Juan could drive him to the interview. Jorge lived in Plano, but he arranged to have someone drive the car to Elgin. Juan drove defendant to Geneva for his interview, after which they returned to Elgin. Juan had a friend who needed some brake work on his car. Defendant agreed to do the work to repay Juan for the favor of driving him to Geneva. They then traveled to Montgomery to repair Juan's friend's car. They finished at about 7 p.m. While working on the car, they were drinking. Defendant probably had about 12 beers. Juan then drove defendant to a bar in Somonauk, where they continued to drink. When they left the bar to return to Elgin, defendant lay down in the backseat while Juan drove. The route to Elgin took them onto Little Rock Road. While traveling on Little Rock Road, defendant felt the vehicle leave the roadway. The vehicle traveled into a field and hit a pole. Defendant hit his head and was rendered unconscious. When he regained consciousness, defendant noticed that Juan was not in the driver's seat and the engine was still running. Defendant grabbed the car key fob to turn off the engine. He then put the key fob in his pocket.

¶ 10    After defendant's testimony, the defense rested, and the State introduced the sentencing order showing defendant's prior conviction of unlawful possession of a controlled substance. The trial court found defendant guilty of all charges. The trial court merged all DUI convictions into one aggravated DUI conviction in case No. 21-CF-69 and sentenced defendant to concurrent prison terms of three years for aggravated DUI and one year for DWLS. In addition, the court imposed a fine in case No. 21-TR-675. This appeal followed, and the trial court appointed the Office of the State Appellate Defender to represent defendant.

¶ 11    Pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *People v. Jones*, 38 Ill. 2d 384 (1967), the appellate defender moves to withdraw as counsel. In his motion, counsel states that he

read the record and found no issue of arguable merit. Counsel further states that he advised defendant of his opinion. Counsel supports his motion with a memorandum of law providing a statement of facts and an argument why this appeal presents no issue of arguable merit. We advised defendant that he had 30 days to respond to the motion. That time is past, and defendant has not responded.

¶ 12    Counsel advises us that he considered arguing on appeal whether (1) the evidence was sufficient to sustain defendant's convictions of aggravated DUI, DWLS, and operating an uninsured vehicle; (2) defendant's jury waiver was valid; (3) the trial court erred in granting the State's motion *in limine*; and (4) the trial court erred at sentencing. Counsel concludes that none of these issues is arguably meritorious. We agree.

¶ 13    On the first potential issue—evidentiary sufficiency—we note that a reviewing court will not set aside a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). When a defendant challenges the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶ 14    We consider first the evidence to support the aggravated DUI conviction. Section 11-501(a)(2) of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11-501(a)(2) (West 2020)) provides:

> "(a) A person shall not drive or be in actual physical control of any vehicle within this State while:
>
> ***

(2) under the influence of alcohol[.]"

¶ 15    We initially consider whether there is any basis for arguing that the State failed to prove that defendant drove the Volkswagen. The evidence shows that defendant was alone when McElroy discovered him emerging from the Volkswagen at the scene of the accident. Moreover, defendant possessed the vehicle's key fob. Finally, a police search of the area found no one else who might have driven the Volkswagen. Thus, there is no arguable basis for challenging the sufficiency of the evidence that defendant drove the Volkswagen.

¶ 16    The next question is whether defendant was under the influence of alcohol when driving. The governing law is:

"A defendant is under the influence of alcohol when, as a result of consuming alcohol or any other intoxicating substance, the defendant's ' "mental or physical faculties are so impaired as to reduce [the] ability to think and act with ordinary care." ' [Citation.] To be under the influence of alcohol, a defendant must be under the influence to a degree that renders her incapable of driving safely. [Citation.] Whether a defendant was intoxicated is a question of fact to be resolved by the trial court. [Citation.]" *People v. Groebe*, 2019 IL App (1st) 180503, ¶ 57.

¶ 17    Factors supporting a finding that a motorist was under the influence include (1) the odor of alcohol on his or her breath (*People v. Tatera*, 2018 IL App (2d) 160207, ¶ 31); (2) "glossy" eyes (*People v. Hewitt*, 212 Ill. App. 3d 496, 504 (1991)); (3) "slurred speech" (*People v. Phillips*, 2015 IL App (1st) 131147, ¶ 19); and (4) the motorist's admission to consuming alcohol (*People v. Jophlin*, 2018 IL App (4th) 150802, ¶ 50). All those factors were present here. In addition, defendant refused to submit to testing of the alcohol level of his blood, breath, or urine. His refusal was evidence of consciousness of guilt. *People v. Love*, 2013 IL App (3d) 120113, ¶ 36. Given

this evidence, it would be frivolous to argue that the State failed to prove that defendant was under the influence of alcohol.

¶ 18 Finally, the offense was properly enhanced from simple DUI to aggravated DUI based on defendant's two prior violations of the DUI statute. See 625 ILCS 5/11-501(d)(1)(A) (West 2020). The two prior violations are not elements of the offense and need not be proven at trial. See *People v. May*, 2021 IL App (4th) 190893, ¶ 32. At sentencing, the State submitted defendant's driving record abstract showing two prior violations of the DUI statute. The abstract was *prima facie* evidence of the facts stated therein. 625 ILCS 5/2-123(g)(6) (West 2020). Defendant presented no evidence to refute the facts stated in the abstract. Therefore, it would be frivolous to argue that the State failed to meet its burden of proving the prior violations. In conclusion, there is no arguably meritorious basis for challenging defendant's aggravated DUI conviction.

¶ 19 We also agree with counsel that there is no potentially meritorious basis for challenging the evidence's sufficiency to support defendant's DWLS conviction. Section 6-303(a) of the Vehicle Code (*id.* § 6-303(a)) provides, in pertinent part: "any person who drives or is in actual physical control of a motor vehicle on any highway of this State at a time when such person's driver's license *** is revoked or suspended *** shall be guilty of a Class A misdemeanor." As discussed above, the evidence was sufficient to prove beyond a reasonable doubt that defendant was driving on March 5, 2021. Furthermore, defendant's driving record abstract, admitted at trial, stated that a statutory summary suspension of defendant's driver's license was in effect on March 5, 2021.

¶ 20 In addition, defendant's DWLS conviction was properly enhanced to a Class 4 felony because section 6-303(d-2) of the Vehicle Code (*id.* § 6-303(d-2)) provides:

"Any person convicted of a third violation of this Section is guilty of a Class 4 felony and must serve a minimum term of imprisonment of 30 days, if:

(1) the current violation occurred when the person's driver's license was suspended or revoked for a violation of Section 11-401 or 11-501 of this Code, or a similar out-of-state offense, or a similar provision of a local ordinance, or a statutory summary suspension or revocation under Section 11-501.1 of this Code; and

(2) the prior convictions under this Section occurred while the person's driver's license was suspended or revoked for a violation of Section 11-401 or 11-501 of this Code, a similar out-of-state offense, a similar provision of a local ordinance, or a statutory summary suspension or revocation under Section 11-501.1 of this Code, or for a violation of Section 9-3 of the Criminal Code of 1961 or the Criminal Code of 2012, relating to the offense of reckless homicide, or a violation of subparagraph (F) of paragraph (1) of subsection (d) of Section 11-501 of this Code, relating to the offense of aggravated driving under the influence of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof when the violation was a proximate cause of a death, or a similar out-of-state offense."

At sentencing, the court admitted an abstract of defendant's driving record abstract, which showed that defendant had two prior convictions of DWLS. Both convictions arose from the statutory summary suspension of defendant's license. Accordingly, it would be frivolous to argue that the evidence was insufficient to sustain defendant's felony DWLS conviction.

¶ 21    Counsel is also correct that it would be frivolous to challenge the evidence supporting defendant's conviction of driving an uninsured vehicle. Section 3-707(a) of the Vehicle Code (*id.* § 3-707(a) (West 2020)) provides that "[n]o person shall operate a motor vehicle in this State

unless the motor vehicle is covered by a liability insurance policy." As previously discussed, the evidence was sufficient to prove beyond a reasonable doubt that defendant was driving a vehicle on March 5, 2021. Section 3-707(b) of the Vehicle Code (*id.* § 3-707(b)) provides, in pertinent part, that "[a]ny person who fails to comply with a request by a law enforcement officer for display of evidence of insurance *** shall be deemed to be operating an uninsured motor vehicle." "However, no person charged with violating this Section shall be convicted if such person produces in court satisfactory evidence that at the time of the arrest the motor vehicle was covered by a liability insurance policy ***." *Id.* § 3-707(c). Defendant did not provide proof of insurance for the Volkswagen either when the police requested it on March 5, 2021, or later in court. Accordingly, there is no colorable basis for challenging the evidence's sufficiency to sustain defendant's conviction of driving an uninsured vehicle.

¶ 22    On the second potential issue—whether defendant's jury waiver was valid—the following principles apply:

> "To be valid, a jury waiver must be knowing and understanding. [Citation.] A court need not give any particular admonishments or advice to effect a valid jury waiver. [Citation.] Given that a defendant typically speaks and acts through his or her attorney, jury waivers are typically valid when made by defense counsel in a defendant's presence where the defendant does not object. [Citation.]" *People v. Manning*, 2020 IL App (2d) 180042, ¶ 20.

Here, with defendant present in court, defendant's attorney advised the trial court that defendant had signed a written waiver of his right to a jury trial (the waiver was filed with the court and is in the appellate record). The court then questioned defendant to determine whether he had enough time to consult with counsel before signing the waiver. Defendant responded that he did. The

court explained that defendant had a constitutional right to a trial by a jury of his peers and confirmed that defendant had discussed with counsel the benefits and detriments of waiving a jury trial. The court also confirmed that no one had forced or coerced defendant to waive his right to a jury trial. Accordingly, we agree that there is no arguably meritorious basis for challenging defendant's jury waiver.

¶ 23   We also find no potential merit in the third potential issue: whether the trial court erred in granting the State's motion *in limine* to admit, for impeachment, defendant's prior conviction of possession of a controlled substance. Illinois Rule of Evidence 609(a) (eff. Jan. 6, 2015) provides, in pertinent part:

> "For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime *** is admissible but only if the crime, (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, or (2) involved dishonesty or false statement regardless of the punishment unless (3), in either case, the court determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice."

Illinois Rule of Evidence 609(b) (eff. Jan. 6, 2015) provides that "[e]vidence of a conviction under this rule is not admissible if a period of more than 10 years has elapsed since the date of conviction or of the release of the witness from confinement, whichever is the later date." Here, there is no question that defendant's prior conviction was punishable by more than a year in prison and that it fell within the 10 years. However, during the hearing on the motion *in limine*, defendant argued that the danger of unfair prejudice substantially outweighed the probative value of the evidence. In granting the motion, the trial court did not specifically address that argument, commenting only that "on balance [the conviction] does fall within the ten years." However, even if the trial court

failed to properly weigh the conviction's probative value against the danger of unfair prejudice, the defendant forfeited the issue by failing to include it in his motion for a new trial. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988).

¶ 24 Under appropriate circumstances, a reviewing court may consider forfeited errors under the plain-error rule. See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). As our supreme court has recently explained:

> "[T]he plain error rule allows reviewing courts discretion to review forfeited errors under two alternative prongs: (1) when a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) when a clear or obvious error occurred and the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence."
>
> *People v. Moon*, 2022 IL 125959, ¶ 20.

¶ 25 Here, the evidence was not closely balanced. To overcome forfeiture, defendant would have to establish second-prong plain error, equivalent to "structural error." *Id.* ¶ 28. "Structural errors" are ones that "affect the framework within which the trial proceeds, rather than mere errors in the trial process itself." *Id.* ¶ 29. Even assuming, *arguendo*, that the trial court did not properly weigh the danger of unfair prejudice against the probative value of the prior conviction, the error did not affect the *framework* within which the trial proceeded. Hence, no plain error occurred, so it would be frivolous to challenge the trial court's ruling on the State's motion *in limine*.

¶ 26 On the final potential issue—whether the trial court erred at sentencing—counsel notes that defendant forfeited any challenge to his sentence by failing to file a postsentencing motion in the trial court. See *People v. Johnson*, 2021 IL App. 2d 180775, ¶ 12. Counsel adds that there is no

apparent basis for plain-error review. We agree. To show plain error in the sentencing context, the defendant must show that a "clear or obvious error occurred" at sentencing *and* "either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). "The first step of plain-error review is determining whether any error occurred." *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). From our record review, we find no error in sentencing, let alone plain error.

¶ 27    It is well established that "[a] sentence imposed within the statutory range is presumed to be proper and will not be disturbed absent an abuse of discretion." *People v. Charleston*, 2018 IL App (1st) 161323, ¶ 16. A court abuses its discretion when it imposes a sentence that "is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *Id.* Here, defendant's aggravated DUI conviction was a Class 2 felony (625 ILCS 5/11-501(d)(2)(B) (West 2020)) punishable by a prison term of three to seven years (730 ILCS 5/5-4.5-35(a) (West 2020)). Defendant's DWLS conviction was a Class 4 felony (625 ILCS 5/6-303(d-2) (West 2020)) punishable by a prison term of one to three years (730 ILCS 5/5-4.5-45(a) (West 2020)). The trial court imposed the minimum prison terms and ordered them served concurrently. There is no potentially meritorious basis for arguing that these sentences were an abuse of discretion.

¶ 28    After examining the record, the motion to withdraw, and the memorandum of law, we agree with counsel that this appeal presents no issue of arguable merit. Thus, we grant the motion to withdraw, and we affirm the judgment of the circuit court of Kendall County.

¶ 29    Affirmed.